IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARLISTA J., O/B/O K.W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 3118 |
| v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI[2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Arlista J. on behalf of her minor child K.W. ("Claimant") brings a motion for summary judgment to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying Claimant's eligibility for Supplemental Security Income ("SSI") benefits. The Commissioner brings a cross-motion seeking to uphold the prior decision. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons stated below, Claimant's motion for summary judgment (Dckt. #17) is granted and the Commissioner's motion for summary judgment (Dckt. #24) is denied.

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

I.  BACKGROUND

    A.  **Procedural History**

Claimant filed applications for childhood disability benefits and was originally found disabled as a three-month old infant, as of August 31, 2007, due to low birth weight. (R. 83). In November 2009, at a Continuing Disability Review ("CDR"), his disability was continued due to developmental delay. (*Id.*). Thereafter, at a May 2015 CDR, it was determined that Claimant was no longer disabled and that his disability ceased as of May 2014. (R. 68, 83). Claimant's May 2015 request for reconsideration was denied on July 7, 2016. (R. 77, 93). Claimant filed a timely request for a hearing, which was held on January 23, 2018, before an Administrative Law Judge ("ALJ"). (R. 36, 97). On May 16, 2018, the ALJ issued a decision finding Claimant's disability ended as of May 1, 2014, and that he had not become disabled again since that date. (R. 15-30). Claimant filed a timely request for review of that decision, which was denied by the Appeals Council on March 5, 2019. (R. 1-8, 180-83).

    B.  **The Standard for Proof of Disability Under the Social Security Act**

Disabled children are entitled to benefits from the Social Security Administration, *see* 42 U.S.C. §1382c(a)(3)(C), but the determination of disability follows a different model then that used for adult applicants. *McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021). While benefits for an adult depend on a work history plus the current inability to perform a job, a child is unlikely to have a work history, and neither the statute nor the regulations ask whether the child can perform an adult job. *Id*. Rather, the Commissioner asks "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them." *Id.* ("The language from which *Zebley* drew the "functional equivalence" standard has been deleted by an amendment to § 1382c(a)(3)(C)(i), but it remains in a regulation, 20 C.F.R.

2

§416.924.") (citing to *Sullivan v. Zebley*, 493 U.S. 521 (1990)). Then, to determine if a child's impairment is functionally equivalent to a listing, the Commissioner "asks whether it produces a marked limitation in at least two—or an extreme limitation in one—of six 'domains of functioning.'" *McCavitt*, 6 F.4th at 693 (citing to 20 C.F.R. § 416.926a(a)).

After the Commissioner determines a child is disabled, "there is a statutory requirement that the case be periodically reviewed to determine whether the child remains eligible to receive benefits." *Moten ex rel. Janisha C. v. Barnhart*, No. 06 C 0824, 2007 WL 2875499, at *6 (N.D.Ill. Sept. 27, 2007) (citing to 20 C.F.R. §416.994a). To determine whether a child remains eligible, the Commissioner first assesses whether there was "medical improvement" in the child's impairment. *Id.* Medical improvement is "any decrease in the medical severity of an impairment that was present at the time of the most recent favorable decision that the child was disabled or continued to be disabled." *Id.* (citing to 20 C.F.R. §416.994a(c)). A determination that a decrease in the medical severity occurred "must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with the child's impairment." *Id.* If there is no improvement, the child remains disabled (with certain exceptions). 20 C.F.R. §416.994a(a)(1). However, if there has been improvement, then the "Commissioner considers whether the impairment the child had at the time of the most recent favorable decision continues to meet or equal the severity of the listing it met or equaled at that time." *Moten ex rel. Janisha C.*, 2007 WL 2875499 at *6. "If the Commissioner determines that this impairment no longer meets or equals the listed impairment, then she considers whether the child has any other severe impairment that meets or equals a listed impairment." *Id.* (citing to 20 C.F.R. § 416.994a(b)(3)).

Next, the Commissioner determines if the child satisfies the three disability requirements for any current impairments: (1) the child cannot be engaged in any substantial gainful activity;

3

(2) the child must have a medically determinable impairment or combination of impairments that is severe; and (3) the child's impairment must meet, medically equal, or functionally equal an impairment in the Listing. *Moten ex rel. Janisha C.*, 2007 WL 2875499 at *6 (citing to 20 C.F.R. §416.924 (b)-(d)). "If the child's impairment meets or medically equals any listed impairment, the Commissioner must find that the child remains disabled." *Id.* (citing to 20 C.F.R. §416.994a(b)(3)(ii)). For such a child's impairment to medically equal an impairment in the Listing, "it must be at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citing to 20 C.F.R. §416.926(a)).

If the child's impairment does not meet or medically equal an impairment in the Listing, then the Commissioner determines whether the child's *current* impairment functionally equals the Listing. *Id.* For a child's impairments to functionally equal the requirements of an impairment in the Listing, the regulations require an evaluation of the child's limitations in six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1)(i)-(vi). For a "child's impairment to 'functionally equal' the requirements of an impairment in the Listing, the child must exhibit 'marked' limitations in at least two domains of functioning or an 'extreme' limitation in at least one domain." *Moten ex rel. Janisha C.*, 2007 WL 2875499 at *6 (citing to 20 C.F.R. §416.926a(a)).

## II. THE ALJ'S DECISION

On May 16, 2018, the ALJ issued a written decision finding that Claimant's disability ended as of May 1, 2014, and that Claimant has not become disabled again since that date. (R. 15). The ALJ determined that the Claimant's Comparison Point Decision ("CPD") – the most

recent favorable decision finding Claimant continued to be disabled – was November 23, 2009. (R. 18). The ALJ stated that at the time of the CPD, Claimant had the medically determinable impairment of history of developmental delay, which was found to equal the listings (20 CFR §§416.924(d) and 416.926(a)). (*Id.*). The ALJ also stated that at the time of the CPD, Claimant had marked limitations in two of the domains of functioning (acquiring and using information and in attending and completing tasks) and no limitations in the remaining four domains of functioning (interacting and relating with others, moving and manipulating objects, caring for himself, and health and physical well-being). (R. 19).

Next, the ALJ determined that the medical evidence supported a finding that medical improvement occurred as of May 1, 2014, because there was a decrease in medical severity of the impairments present at the time of the CPD. (R. 19). The ALJ found that the Claimant demonstrated less than marked limitations in the domains of acquiring and using information and attending and completing tasks. (*Id.*).

The ALJ noted that the Claimant, who was born on May 18, 2007, was a school-aged child as of May 1, 2014. (R. 21). He determined that since May 1, 2014, Claimant's impairments at the time of the CPD have not functionally equaled the Listings of Impairments. (*Id.*). In doing so, the ALJ considered the Claimant's symptoms and followed a two-step process, first finding that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but then finding that the statements considering the intensity, persistence, and limiting effects of the Claimant's symptoms were not entirely consistent with the objective medical and other evidence. (*Id.*).

The ALJ then analyzed the six domains of function and determined that since May 1, 2014, Claimant's impairments that were present as of the CPD resulted in *less than marked*

*limitation* in (1) acquiring and using information and (2) attending and completing tasks and *no limitation* in (3) interacting and relating with others, (4) moving about and manipulating objects, (5) the ability to care for himself, and (6) health and physical well-being. (R. 23-28). In summary, the ALJ found that since May 1, 2014, the Claimant's impairments present at the CPD did not result in "marked" limitation in two domains of functioning or "extreme" limitation in one domain of functioning, meaning Claimant's impairments did not functionally equal the listings as of May 1, 2014. (R. 28). The ALJ also found that Claimant did not develop any additional impairments subsequent to the CPD. (Id.). Therefore, the ALJ determined that Claimant's disability ended on May 1, 2014, and that he has not become disabled again since that date. (R. 29).

### III. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Consequently, this Court will affirm the ALJ's decision if it is supported by substantial evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent symptom evaluations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## IV.     ANALYSIS

Claimant urges this Court to remand the ALJ's decision to deny him an award of benefits based on a number of arguments. Claimant asserts that the ALJ erred by: (1) failing to compare medical evidence from the last favorable medical decision, the CPD, to current medical evidence; (2) ignoring and mischaracterizing evidence to conclude that K.W. had medically improved as of May 2014; and (3) ignoring and mischaracterizing evidence to conclude that K.W. did not functionally equal the Listings and marked impairments in acquiring and using information, as well as attending and completing tasks. Because the Court agrees that remand is necessary for the first issue, it will not address the remaining substantive arguments raised by Claimant. *See, e.g., DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

Here, the Court cannot undertake a meaningful judicial review of the ALJ's decision because the CPD is not included in the administrative record and, accordingly, the Court cannot be certain that the ALJ reviewed that decision. *K.L. o/b/o J.A.E.C. v. Saul*, No. 19-CV-2407, 2020 WL 2468199, at *3 (N.D.Ill. May 13, 2020) ("Without knowing what impairments were

7

present in the CPD, there is no way for [the] ALJ to determine whether there has been medical improvement in those impairments, and there can be no meaningful judicial review of that determination.") (citing to *Whatley for M.W. v. Berryhill*, 2:17-CV-196-JEM, 2018 WL 3989468, at *4 (N.D.Ind. Aug. 20, 2018)). In particular, while the ALJ acknowledged the CPD (R. 18-19), there is no record citation to the CPD anywhere in his decision. Instead, any references to the CPD merely state: "[a]t the time of the CPD." Claimant argues in both his opening and reply briefs that the CPD is not itself part of the record (Dckt. #17 at 3; Dckt. #26 at 2), and the Commissioner does not dispute Claimant's assertion in its brief.

Remand is required because the first step of the sequential process requires the ALJ to review and analyze the CPD and "[w]ithout that document and reasoning behind the decision, the ALJ cannot properly determine whether medical improvement has occurred." *K.L. o/b/o J.A.E.C.*, 2020 WL 2468199, at *3. For instance, the ALJ indicated Claimant functionally "equaled" the listings at the CPD, (R. 18). However, Claimant points out that this statement of record is incorrect as the Commissioner found that Claimant "met" the Listing 112.02 at the CPD, as indicated by the Code "70" in box 12 as the reason for continuance. (Dckt. #17 at 7-8 & n.4 (citing to R. 67)). The ALJ needs the starting point against which improvement is measured to determine if Claimant has medically improved. As such, it is impossible to know if there was a change in the signs, symptoms, or laboratory tests that formed the basis of the CPD without knowing the baselines established in the CPD. *K.L. o/b/o J.A.E.C.*, 2020 WL 2468199, at *3. Thus, although "there is some medical evidence from around the time of the CPD in the administrative record and this evidence may have formed the basis for the CPD, neither the Court nor the ALJ can accurately determine whether there is medical improvement without reference to the CPD itself." *Id.* Significantly, the record is void of any information supporting

8

the ALJ's statement that, at the time of the CPD, Claimant's impairments resulted in marked limitations in acquiring and using information and no limitation in the remaining four domains of functioning. (R. 19). Simply stated, this Court has no information as to the basis for this finding and it therefore cannot ascertain what the ALJ relied upon to formulate this statement.[3]

The focus at step one is whether there have been changes in the signs, symptoms, and laboratory tests, *not* if claimant's impairment meets or equals a Listing (questions for steps two and three). The ALJ (without citation to the administrative record) simply stated that "at the time" of the CPD, Claimant had "marked limitations" in (1) acquiring and using information and (2) in attending and completing tasks and "no limitation" in the remaining four domains of functioning. (R. 19). The regulations are clear that for children, like Claimant, "the terms symptoms, signs, and laboratory findings may include any abnormalities of physical and mental functioning that we used in making our most recent favorable decision." 20 C.F.R. §416.994a(c). But neither the ALJ (nor the Court for that matter) knows what "abnormalities of physical and mental functioning" were used in determining the CPD because the CPD was not included in the administrative record. *Id.* As such, "the ALJ could not build an accurate bridge to support the conclusion that medical improvement occurred," and the Court cannot meaningfully review that finding. *K.L. o/b/o J.A.E.C.*, 2020 WL 2468199, at *3. Therefore, remand is required on this issue and the ALJ is directed to fully develop the record, including by obtaining the CPD prior to rendering a decision. *See, e.g., Whatley*, 2018 WL 3989468, at *4.

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment (Dckt. #17) is granted and the Commissioner's motion for summary judgment (Dckt. #24) is denied. This case

---

[3] To be clear, the CPD finding is not at issue in this case. But that finding and the basis for it are imperative to the analysis of this case.

9

is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

**Dated:** **January 27, 2022**

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**